UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO N. DELA CRUZ,<br>Plaintiff,<br>v.<br>MEGAN BRENNAN,<br>Defendant. | Case No. 19-cv-01140-DMR<br><br>**ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br>Re: Dkt. No. 39 |

Plaintiff Fernando N. dela Cruz, Jr., representing himself, filed a second amended complaint against Megan Brennan, Postmaster General, alleging claims related to his previous employment with the United States Postal Service ("USPS"). [Docket No. 38 (Second Amended Complaint, "SAC").] Defendant now moves to dismiss the SAC pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6). [Docket No. 39.] Plaintiff concurrently moves for leave to add a claim to the SAC, which Defendant opposes. [Docket Nos. 42, 48.]

An attorney subsequently entered an appearance on behalf of Plaintiff and counsel appeared for both parties at the February 13, 2020 hearing. For the following reasons, the motion to dismiss is granted. Plaintiff's motion for leave to add a claim to the SAC is granted. Any third amended complaint must be filed within 14 days of the date of this order.

## I. BACKGROUND

### A. Allegations in the SAC

Plaintiff makes the following allegations in the SAC: Plaintiff worked as a letter carrier for the USPS for over 15 years in Petaluma, California. SAC ¶ 8. On January 19, 2016, Plaintiff reported to his supervisor, Ryan Goodman, that the vehicle he was driving had a defective signal light. Due to poor weather conditions, Plaintiff believed that it was unsafe to continue using the vehicle. Goodman insisted that Plaintiff continue to drive the vehicle, which caused Plaintiff

"severe stress and emotional distress." Plaintiff consulted with his doctor, obtained a doctor's note and a prescription for medication for stress, and went on leave from January 19 to 29, 2016. Plaintiff later discovered that Defendant "marked him AWOL" during that period. *Id*. at ¶¶ 9-11. Plaintiff subsequently filed a grievance regarding his supervisors' insistence that he "use a defective car." *Id*. at ¶ 12.

In March 2016, Postmaster Raj Ghoman and Goodman "harassed" Plaintiff by following him when he was on his route and "imped[ing] his movements to prevent" Plaintiff from timely delivering the mail. *Id*. at ¶ 13. In addition, they retaliated against Plaintiff by issuing a Letter of Warning dated March 10, 2016, which "contained alleged violations of [USPS] procedures" by Plaintiff. The alleged violations "were nitpicky, and they were acts which other employees committed but for which other employees were not disciplined." *Id*. at ¶ 14. The Letter of Warning lists four examples of violations of various employee responsibilities by Plaintiff, and states that one of his responsibilities is to "[k]eep physically and mentally fit to meet the requirements of the job." SAC Ex. 2. Plaintiff alleges that this statement "was in jest of [Plaintiff's] stress he suffered due to the January 19, 2016 incident" and accordingly "was discriminatory against [Plaintiff] on the basis of his disability: stress for which [Plaintiff] had to take stress leave and take medication." SAC ¶ 15. Plaintiff submitted a written response to the Letter of Warning on March 13, 2016. *Id*. at ¶¶ 16-17, Ex. 3.

Plaintiff requested bereavement leave in August 2016, which his supervisor denied. He took the leave anyway. SAC ¶ 18. He also missed work in September 2016 due to back pain. *Id*. at ¶ 19. On October 7, 2016, Plaintiff attended a "Joint Cooperation Process" meeting with his manager, Sue Moore, during which she alleged that he "failed to follow instructions and failed to be in regular attendance from January 2016 to the present," referring to his January 2016 stress leave, August 2016 bereavement leave, and September 2016 absence due to back pain. *Id*. at ¶ 20. The same day, Plaintiff sent a letter to Postmaster Ghoman requesting a "Grievance Conference" to discuss management's alleged retaliation against him and violations of his "sick leave and bereavement rights," among other things. *Id*. at ¶ 21, Ex. 4.

On October 26, 2016, Defendant suspended Plaintiff without pay and notified him that he

was under investigation for manipulating Collection Point Management Systems ("CPMS") scans on two occasions. As part of the investigation, Moore interviewed Plaintiff on October 31, 2016. Plaintiff alleges that Moore's notes of the interview "contained inaccuracies" that she refused to correct. SAC ¶ 23-24, Ex. 6.

On November 10, 2016, Plaintiff received a Notice of Removal effective December 23, 2016 based on alleged improper conduct, including placing false information in the CPMS system. SAC ¶ 25, Ex. 7. Defendant subsequently ordered Plaintiff to return to work from December 20-29, 2016, but he refused to sign a "Last Chance Agreement." He was again suspended on December 30, 2016 before being terminated effective January 18, 2017. *Id*. at ¶¶ 29-31.

Plaintiff alleges that in November 2016, a letter carrier "witnessed a female letter carrier, Winne He, being assisted by her supervisor, Larry Lovejoy, in scanning parcel barcodes in photos that Ms. He had taken on her smartphone versus in the address location," which is "the exact thing for which [Plaintiff] was being removed." *Id*. at ¶ 30.

Plaintiff filed an EEO complaint alleging "retaliation based on prior EEO activity." *Id*. at ¶ 33.

The SAC contains four claims for relief: 1) sex discrimination in violation of Title VII, 42 U.S.C. § 2000e; 2) retaliation for taking Family Medical Leave Act-protected leave, based on his January 19-29, 2016 stress leave; 3) disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 791; and 4) retaliation in violation of Title VII.

**B.     Procedural History**

Plaintiff filed a complaint against Defendant on February 28, 2019. He filed an amended complaint ("FAC") on August 15, 2019. Defendant moved to dismiss, and on November 4, 2019, the court granted the motion. The court dismissed with prejudice Plaintiff's Whistleblower Protection Act and fraud claims. [Docket No. 37 (Nov. 4, 2019 Order).] It also dismissed Plaintiff's disability and sex discrimination claims with leave to amend, noting that Defendant argued on reply that Plaintiff had failed to exhaust his administrative remedies as to those claims before filing suit. The court warned Plaintiff that in amending the complaint, "he should be mindful that the court may lack subject matter jurisdiction over claims that were not part of his

3

1   EEO proceedings and thus were not administratively exhausted." *Id*. at 5 n.2 (emphasis removed).
The court instructed Plaintiff to "plead his best case" in the SAC. *Id*. at 7.

Defendant now moves to dismiss the SAC. She argues that Plaintiff's claims for sex discrimination, disability discrimination, and Title VII retaliation must be dismissed because they were not administratively exhausted and/or because they are insufficiently pleaded. She further argues that Plaintiff's new claim for FMLA retaliation should be dismissed because the court did not grant him leave to add any new claims to the SAC. After Defendant filed her motion to dismiss, Plaintiff moved for leave to add the FMLA retaliation claim to the SAC.

## II.   LEGAL STANDARDS

Defendant moves to dismiss Plaintiff's SAC pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6). Rule 8(a) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he short and plain statement must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quotation omitted).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing

4

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Defendant also moves to dismiss Plaintiff's sex and disability discrimination claims pursuant to Rule 12(b)(1). A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1). The challenging party may make a facial or factual attack challenging subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. at 1039. A factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242 (citation omitted). Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

Pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. The Ninth Circuit has held that "where the petitioner is pro se," courts have an obligation, "particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). "However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).

## III. DISCUSSION

The court will first address Plaintiff's sex discrimination, disability discrimination, and retaliation claims before turning to Plaintiff's motion for leave to add the FMLA retaliation claim to the SAC.

### A. Exhaustion of Administrative Remedies

Defendant moves pursuant to Rule 12(b)(1) to dismiss Plaintiff's sex and disability discrimination claims on the ground that the claims exceed the scope of the EEO proceedings. It argues that the court lacks jurisdiction over these claims because he did not raise them in his EEO charge and thus did not exhaust his administrative remedies as to the claims.

A federal employee must exhaust the administrative process required by statute before filing an employment discrimination claim in federal court. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976); *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001) (citing 42 U.S.C. § 2000e-16(c)); *see also Leorna v. United States Dep't of State*, 105 F.3d 548, 550 (9th Cir. 1997) (individuals claiming disability discrimination under the Rehabilitation Act must exhaust administrative remedies). "Under the Title VII statutory and regulatory scheme, a federal employee must notify an EEO counselor of discriminatory conduct within 45 days of the alleged conduct, and then, if the matter is not resolved, the employee may submit a formal administrative complaint." *Sommatino*, 255 F.3d at 708. "While not all administrative exhaustion requirements are jurisdictional in nature, Ninth Circuit 'case law holds that substantial compliance with the presentment of discrimination complaints to an appropriate administrative agency *is* a jurisdictional prerequisite.'" *McCarthy v. Brennan*, 230 F. Supp. 3d 1049, 1058 (emphasis in original) (quoting *Sommatino*, 255 F.3d at 709). However, the Supreme Court recently clarified in *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019), that "Title VII's charge-filing requirement is a processing one, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." At least one court in this district has concluded that in light of *Fort Bend*, *Sommatino*'s holding that "substantial compliance with the presentment of discrimination complaints . . . is a jurisdictional prerequisite" is no longer good law, and that "the administrative complaint requirement for Title VII claims by federal employees is not

jurisdictional." *Williams v. Wolf*, 19-cv-00652-JCS, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019); *see also Cloud v. Brennan*, ---F. Supp. 3d---, 2020 WL 533003, at *7-8 (N.D. Cal. Feb. 3, 2020) (analyzing issue of administrative exhaustion for federal employee's Title VII claims under Rule 12(b)(6), citing *Fort Bend* and *Williams*). The court finds the analysis in *Williams* persuasive and concludes that the issue of exhaustion of EEO administrative remedies is not jurisdictional. However, Title VII's charge-filing requirement remains a "mandatory processing rule," and a plaintiff "must allege compliance with that requirement . . . in order to state a claim on which relief may be granted." *Williams*, 2019 WL 6311381, at *6 (quoting *Fort Bend*, 139 S. Ct. at 1851) (internal quotation marks omitted). Therefore, the court will consider Defendant's administrative exhaustion arguments under a Rule 12(b)(6) standard.

In order to show substantial compliance with Title VII's claim presentment requirements, the allegations of a plaintiff's judicial complaint must be "like or reasonably related to the allegations" in an EEO complaint, "such that they would fall within 'the scope of an EEOC investigation which [could] reasonably be expected to grow out of the [administrative] charge of discrimination.'" *Id*. (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (citations, quotation marks, and emphasis omitted)). Further, courts "should consider [a] plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002). The Ninth Circuit has instructed courts to construe "EEOC charges . . . with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Sosa*, 920 F.2d at 1458.

Here, the SAC includes the following allegations about Plaintiff's EEO charge. He "filed a formal EEO complaint on February 3, 2017 on the basis of retaliation based on prior EEO activity," and the USPS EEO "accepted [Plaintiff's] formal complaint as to the allegation" on February 21, 2017. SAC ¶ 33. He further alleges that his complaint was dismissed on July 11, 2018, and that the Office of Federal Operations affirmed the dismissal on or about November 28, 2018. *Id*. Plaintiff did not attach his EEO complaint or any related documents to the SAC, but both parties submitted portions of Plaintiff's EEO complaint investigative file in connection with

7

this motion. [*See* Docket Nos. 39-1 (Davis Decl., Dec. 9, 2019) Ex. 1; 45 (dela Cruz Decl., Dec. 23, 2019) Exs. 1, 2.] Generally a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). If "matters outside the pleading are presented to and not excluded by the court," the court must treat the motion as a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Given the early stage of the litigation, the court declines to convert Defendant's motion into a motion for summary judgment. Instead, the court takes judicial notice of certain official records from Plaintiff's EEO proceedings pursuant to Federal Rule of Evidence 201; specifically, Plaintiff's 17-page formal EEO Complaint of Discrimination, received on February 3, 2017, which is attached to Plaintiff's declaration as Exhibit 1, and the six-page "Partial Acceptance/Partial Dismissal of Formal EEO Complaint" dated February 21, 2017, which is attached to the Davis declaration as a portion of Exhibit 1 (Docket No. 39-2 at ECF pp. 3-8). Under Rule 201, a court may take judicial notice of "an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Neither party disputes the accuracy of these documents. While the court does not take judicial notice of every assertion of fact within the documents, *see Khoja*, 899 F.3d at 999, it takes judicial notice of Plaintiff's own description of the discrimination he alleged in his EEO complaint, along with the EEO Investigative Services Office's description of the discrimination allegation that it accepted for investigation. *See Cloud*, 2020 WL 533003, at *8 (judicially noticing plaintiff's references to sexual harassment in official records of EEO proceeding).

Plaintiff's EEO complaint consists of a form entitled, "EEO Complaint of Discrimination in the Postal Service" and several pages of attachments. The form includes question 14, "Type of

8

Discrimination You Are Alleging," with check-off boxes next to eight categories of discrimination, including sex, disability, and retaliation. Plaintiff checked off only the box for "Retaliation (Specify Prior EEO Activity):" and under question 16, which has space for an explanation or narrative of the alleged discrimination, Plaintiff wrote "Please See the Attached Explanation." The one-page "Attached Explanation for Question Number 16 of PS Form 2565" states, "On March 9, 2016, I was retaliated by respondent of the above captioned case named RAJ GHOMAN, postmaster of Petaluma Post Office because I filed a grievance, complaining about the 'Unsafe Order' of the management to continue using a delivery vehicle whose emergency lights were not working." Plaintiff went on to describe the circumstances of the order to continue using the vehicle, stating, "[l]ast October 26, 2016, I was retaliated again" by Ghoman in the form of an indefinite suspension "because I made a grievance conference inviting him and [a union representative] . . . , I wrote a letter to the Postmaster General of the U.S. Postal Service reporting respondent's abuse of authority . . . , and I answered the Letter of Warning issued to me and gave it to supervisor SUE MOORE . . ." The remaining pages of the EEO complaint consist of copies of Plaintiff's communications with his union representatives, Ghoman, and the Postmaster General, as well as communications from the USPS regarding Plaintiff's employment.

Plaintiff did not check off the boxes to indicate that he was complaining of discrimination based on sex or disability, and neither basis for discrimination is mentioned anywhere in his explanation or the documents attached to his complaint. On February 21, 2017, the National EEO Investigative Services Office issued a "Partial Acceptance/Partial Dismissal of Formal EEO Complaint" that stated the following:

> A portion of the complaint has been accepted for investigation:
>
> Specific Issue(s): You allege discrimination based on Retaliation (Grievance activity) when:
>
> 2. On October 26, 2016, you were put on Emergency Placment [sic] in an Off-Duty Status, and subsequently, on November 12, 2016, you were issued a Notice of Removal.
> . . .
>
> If you do not agree with the defined accepted issue(s), you must provide a written response specifying the nature of your disagreement within seven (7) calendar days of receipt of this letter . . .

9

Partial Acceptance/Partial Dismissal at 1-2. It also notified Plaintiff that the investigation would not involve Plaintiff's claim of retaliation based on Ghoman's March 10, 2016 observation of Plaintiff on his route and subsequent issuance of a Letter of Warning. *Id*. at 2. Therefore, no claims of discrimination based on sex and/or disability were accepted for investigation.

In response, Plaintiff asserts that his "sex discrimination claim could reasonably be expected to grow out of his original charge because the investigative file included testimony and documents which made the claim apparent." Opp'n 7. Specifically, he states that during the investigation, he testified that "a letter carrier witnessed a female letter carrier, Winnie He, being assisted by her supervisor in scanning parcel barcodes in photos which Ms. He had taken on her smartphone versus in the address location." *Id*. In support, he cites Exhibit 1 to his declaration, which he describes as "a portion of the Investigative Summary of Plaintiff's EEO Investigative File." *Id*. (citing dela Cruz Decl. Ex. 1). Exhibit 1 is a one-page document with the footer "Investigative Summary, Page 14 of 16," but only the page numbered 14 is attached to his declaration. The document includes the following statement:

> Comparator testified that Comparator Winny He was treated more favorably than Complainant when Comparator brought photocopied barcodes to the supervisor for assistance. Complainant states both management and the union steward assisted Comparator in entering the barcodes and no one was removed or placed in an emergency status. Comparator He has no past EEO filing.

dela Cruz Decl. Ex. 1.

Given that Exhibit 1 appears to be a portion of a larger document that is not in the record, it does not appear appropriate to take judicial notice of the exhibit. Moreover, even if the court could properly consider the document, it does not support Plaintiff's argument. In addition to He, the document lists a number of comparators who were purportedly treated more favorably than Plaintiff, including at least three who appear to be men (Recto Devera, Giovanni Galvez, and Hai (Sam) Liu). Moreover, Exhibit 1 does not even identify He's sex. The court concludes that Plaintiff's identification of He as a comparator during the investigation of his EEO complaint does not demonstrate that a sex discrimination claim could "reasonably be expected to grow out of" the EEO complaint. *See Sosa*, 920 F.2d at 1456. Nothing in Plaintiff's EEO complaint suggests that

10

Plaintiff was subjected to sex discrimination, and there is no evidence or argument that Plaintiff challenged the scope of the investigation to include such an allegation. Accordingly, the court concludes that Plaintiff failed to exhaust administrative remedies as to his sex discrimination claim, since it was not presented to the agency for investigation and was not "like or reasonably related to" the allegations he made in his EEO complaint. *See Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003). The sex discrimination claim is therefore dismissed with prejudice.

As to the disability discrimination claim, Plaintiff argues that he exhausted this claim because he requested the following remedy in his EEO complaint: "management should pay all my medical expenses due to pain and suffering." EEO Complaint at 1. Further, he notes that in his January 22, 2016 grievance, which was an attachment to his EEO Complaint, he wrote that after Goodman's instruction to continue using his allegedly defective vehicle, he "was terribly stressed by this situation and felt I could not concentrate on working anymore" and "immediately called my doctor on my way home and requested his immediate attention." *Id*. at 3. In another attachment to the EEO complaint, Plaintiff noted that "due to [the disagreement about the vehicle] I felt sick and went to see my doctor and my doctor gave me a doctor's note that I have to be on stress leave for ten (10) days." *Id*. at 7. According to Plaintiff, these references to his medical expenses and medical condition "brought to light Plaintiff's disability discrimination claim, whether the agency chose to investigate additional claims or not." Opp'n 8.

The court disagrees. Plaintiff's mention of his "pain and suffering," stress, and medical treatment for the same in his EEO complaint are insufficient to give notice that he intended to allege disability as a basis for a discrimination claim. A claim for disability discrimination under the Rehabilitation Act is not "like or reasonably related to" the retaliation claim Plaintiff described in his EEO complaint because it "relies on a different theory and a different statute." *See Leong*, 347 F.3d at 1122 (comparing disability discrimination claim with Title VII claims). Specifically, Plaintiff asserted in his EEO complaint that the USPS retaliated against him for complaining about an order to continue using an unsafe vehicle. Although he asserted in his EEO complaint that his supervisors' actions caused him stress that necessitated medical attention and caused him to miss work, he did not allege or suggest that he was suspended or removed from the USPS due to his

11

medical condition. Further, references to stress or illness that cause an employee to miss work are not equivalent to alleging the existence of a "disability" within the meaning of the Rehabilitation Act, which defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (B) a record of such an impairment, or (C) being regarded as having such an impairment." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007) (citing 42 U.S.C. § 12102(2)). Therefore, the EEOC never investigated disability discrimination, and such an investigation could not have been reasonably expected to grow out of Plaintiff's EEO complaint. *See Leong*, 347 F.3d at 1122 ("Nothing in Leong's affidavit would have led the EEOC to suspect that he was disabled or had been subjected to disability discrimination."). Accordingly, Plaintiff's disability discrimination claim is dismissed with prejudice.

### B. Failure to State a Claim

Defendant next moves to dismiss Plaintiff's fourth claim for unlawful retaliation in violation of Title VII. Title VII provides in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, "a plaintiff must demonstrate: (1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006). The Ninth Circuit has held that to satisfy the protected activity requirement, a plaintiff must either oppose conduct that he or she "reasonably perceive[s] as discrimination under [Title VII]" or participate in an investigation or proceeding regarding discrimination that is "reasonably perceived as discrimination prohibited by Title VII." *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) (emphasis removed).

Defendant argues that Plaintiff has not stated a claim for Title VII retaliation because he does not allege any protected acts that have a nexus to Title VII. The SAC lists the following

12

protected activities: a) opposing an order to continue driving an unsafe vehicle; b) taking leave for stress caused by the order to drive an unsafe vehicle; c) filing a grievance regarding the order to drive an unsafe vehicle; d) sending a letter to management "opposing unlawful acts, such as harassment, intimidation, retaliation on March 9, 2016 during his delivery; and an unwarranted, discriminatory and retaliatory Letter of Warning dated March 10, 2016; a violation of the Civil Rights Act of 1964 and ELM sections"; e) requesting a Grievance Conference and informing management and the Postmaster General that "management were violating his rights, intimidating him, and fabricating statements against him . . . and that he was going to file administrative agency complaints if management continued to ignore him; f) filing another grievance on October 16, 2016 and informing the Postmaster General about management's "violations, harassment and intimidation of him through unwarranted discipline"; g) opposing an investigative interview in which he was denied an interpreter; h) filing a Step A grievance on December 7, 2016; i) opposing a discriminatory and retaliatory Notice of Removal; and j) refusing to sign a Last Chance Agreement which required Plaintiff to dismiss his administrative complaints, including his EEO complaints. SAC ¶ 76. According to Defendant, none of these activities involve opposition to practices prohibited by Title VII. For example, opposition to using a vehicle Plaintiff considered unsafe is not opposition to an unlawful employment practice under Title VII, because that statute is not a whistleblower statute protecting employees who report allegedly unsafe activity.

In response, Plaintiff asserts that the protected activities at issue include threats to file EEO charges and refusal to sign a document that would result in the loss of the ability to file an EEO charge, citing *Gifford v. Atchison, Topeka & Santa Fe Ry. Co*., 685 F.2s 1149, 1156 n.3 (9th Cir. 1982). Opp'n 4. In *Gifford*, the Ninth Circuit held that for purposes of a Title VII retaliation claim, there is no distinction "between the filing of a[n EEO] charge which is clearly protected, and threatening to file a charge." 685 F.2d at 1156 n.3 (internal citation omitted). However, the plaintiff in *Gifford* threatened to file, and after her termination did file, an EEO charge asserting sex discrimination. *Id*. at 1151, 1156. Here, notwithstanding Plaintiff's threats to file an EEO charge, Plaintiff does not allege that he ever opposed any conduct that fell within the protection of Title VII, including asserting discrimination based on race, color, religion, sex, or national origin,

13

including in his eventual EEO complaint. Plaintiff also asserts that he repeatedly complained about "harassment and intimidation" to management, and that his complaints followed stress leave. Accordingly, he argues, he "opposed harassing and discriminatory treatment that he experienced because of his disability." Opp'n 5. Yet Title VII does not encompass disability discrimination, and moreover, there is nothing in the SAC that suggests that Plaintiff ever complained of harassment and intimidation based on his disability; to the contrary, in his EEO complaint, he asserted that his supervisors' actions were motivated by his complaints about his vehicle. *See* EEO Complaint.

As noted, in order to establish protected activity under Title VII's anti-retaliation provision, Plaintiff must allege that he opposed conduct that he "reasonably perceive[d] as discrimination under [Title VII]" or that he participated in an investigation or proceeding regarding discrimination that is "reasonably perceived as discrimination prohibited by Title VII." *Learned*, 860 F.2d at 932 (emphasis removed). None of the activities Plaintiff identifies are based on his opposition to discrimination or harassment on account of race, color, religion, sex, or national origin, and Plaintiff's eventual EEO complaint did not reference discrimination based on any category protected by Title VII. *See id.* ("The mere fact that an employee is participating in an investigation or proceeding involving charges of some sort of discrimination . . . does not automatically trigger the protection afforded under [42 U.S.C. § 2000e-3]; the underlying discrimination must be reasonably perceived as discrimination prohibited by Title VII."). Accordingly, he has failed to allege a Title VII retaliation claim. *See id.* (affirming summary judgment on Title VII retaliation claim where plaintiff did not allege discrimination prohibited by Title VII or that he opposed such discrimination). As Plaintiff has already been given one opportunity to amend his complaint to state such a claim, the court dismisses the Title VII retaliation claim with prejudice.

### C. FMLA Retaliation

Finally, Defendant asks the court to dismiss Plaintiff's new claim for FMLA retaliation because the court did not grant him leave to add any new claims to the SAC. Specifically, in dismissing the FAC, the court granted leave to Plaintiff "to file a second amended complaint to

14

attempt to fix his ADA and sex discrimination claims. . ." Nov. 4, 2019 Order at 7. She also states that to the extent the court construes the inclusion of the FMLA retaliation claim in the SAC as a request to add a new claim, she opposes such a request on the basis of delay, futility, and the fact that Plaintiff has already amended his complaint. Mot. 8.

As noted, after Defendant filed her motion to dismiss, Plaintiff filed a motion pursuant to Rule 15(a) for leave to add the FMLA retaliation claim to the SAC, which Defendant opposes. [Docket Nos. 42, 48.] Given the pending motion to amend, the court will analyze the claim under Rule 15(a).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In the absence of an "apparent" reason, such as undue delay, bad faith or dilatory motive, prejudice to the opposing party, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Sols., Inc*., 194 F.3d 980, 986 (9th Cir. 1999). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. "Granting leave to amend does not necessarily mean that the underlying allegations ultimately have merit." *FlatWorld Interactives LLC v. Apple Inc*., 12-CV-01956-WHO, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6, 2013). "Rather, '[a]bsent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend.'" *Id*. (quoting *Eminence Capital*, 316 F.3d at 1052).

Plaintiff's FMLA retaliation claim is based on the following allegations: Goodman's order to Plaintiff to continue using an unsafe vehicle caused Plaintiff "severe stress." Plaintiff consulted with his doctor and went home, and his doctor "prescribed him medication for his stress and had

15

him take stress leave from January 19-29, 2016." SAC ¶¶ 50-51. Plaintiff alleges that he was qualified for FMLA leave at the time he went on stress leave and thus "took FMLA-protected leave." Plaintiff notified Defendant of the leave and provided his doctor's note, and Defendant "engaged in a campaign of harassment and retaliation because Plaintiff took FMLA-protected leave," including "stalking Plaintiff while Plaintiff tried to deliver mail," issuing a Notice of Warning, investigating and interviewing Plaintiff, suspending, and terminating Plaintiff. *Id*. at ¶ 53.

Defendant argues that the court should deny Plaintiff leave to add the FMLA retaliation claim because it is futile. Specifically, Defendant asserts that Plaintiff has not adequately alleged the elements of such a claim and that the claim is time-barred.

The FMLA makes it unlawful for any covered employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an eligible employee's right to protected FMLA leave. 29 U.S.C. § 2615(a). The FMLA creates "two interrelated substantive rights": (1) the "right to use a certain amount of leave for protected reasons," and (2) the "right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines,* 259 F.3d 1112, 122 (9th Cir. 2001) (citation omitted). An employer may violate the latter right if it "interfere[s] with, restrain[s] den[ies] an employee's exercise or attempt to exercise those rights . . . or retaliate[s] or discriminate[s] against an employee . . . for participating in FMLA proceedings or inquiries." *Bonzani v. Shinseki,* No. CIV S–11–0007 EFB, 2011 WL 4479758, at *6 (E.D. Cal. Sept. 26, 2011).

For an employee to state a claim for FMLA retaliation, FMLA leave must be at issue. The FMLA provides that "an eligible employee shall be entitled to a total of 12 work-weeks of leave during any 12–month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 26 U.S.C. § 2612(a)(1). A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves (A) in patient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a heath care provider." 29 U.S.C. § 2611(11).

"When a plaintiff alleges retaliation for exercise of FMLA rights, that claim is properly

16

analyzed as an interference claim under section 2651(a)(1)." *Rivera v. FedEx Corp.*, No. C 12-1098 PJH, 2013 WL 6672401, at \*6 (N.D. Cal. Dec. 18, 2013 (citing *Bachelder*, 259 F.3d at 1124); *see also Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n.7 (9th Cir. 2003) ("§ 2615(a)(2) applies only to employees who oppose employer practices made unlawful by FMLA, whereas, § 2615(a)(1) applies to employees who simply take FMLA leave and as a consequence are subjected to unlawful actions by the employer."). To state a claim for interference, a plaintiff must allege the following: (1) he is an eligible employee; (2) his employer is covered under the FMLA; (3) he was entitled to take leave; (4) he gave notice of his intention to take leave; and (5) the defendant denied him the benefits to which he was entitled under the FMLA. *Sanders v. Newport*, 657 F.3d 772, 778 (9th Cir. 2011). An action under FMLA must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1).

As discussed at the hearing, the SAC does not sufficiently allege an FMLA interference claim. Although the SAC alleges that Plaintiff was "qualified for" FMLA leave at the time he went on stress leave, SAC ¶ 51, it does not allege that Plaintiff's employer is covered under the FMLA or that he was an eligible employee at the time of his leave. Importantly, the SAC does not allege facts sufficient to support the inference that he suffered from a "serious health condition" that qualified for FMLA leave. As noted, a serious health condition is "an illness, injury, impairment, or physical or mental condition that involves (A) in patient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a heath care provider." 29 U.S.C. § 2611(11). For the FMLA to cover outpatient treatment, the condition at issue must involve either a period of incapacity of at least 3 consecutive days and treatment two or more times by a provider, or a chronic serious health condition that results in a period of incapacity. *Marchisheck v. San Mateo Cty.*, 199 F.3d 1068, 1074 (9th Cir. 1999) (citations omitted). "Incapacity" is defined as "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." *Id.* (citation omitted).

The SAC also does not clearly allege that Plaintiff gave notice of his intention to take

FMLA leave. The FMLA requires that an employee's notice to his employer be "sufficient to make the employer aware that the employee needs FMLA qualifying leave." 29 C.F.R. § 825.302(c). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Lacayo v. Donahoe*, No. 14-cv-04077-JSC, 2015 WL 3866070, at *7 (N.D. Cal. June 22, 2015) (quotation omitted). Here, Plaintiff alleges that "Defendant knew Plaintiff exercised his right to take leave protected by the FMLA because Plaintiff notified Defendant of the leave and provided Defendant with his doctor's note regarding the leave." SAC ¶ 52. This is insufficient to allege that Defendant was on notice that Plaintiff was entitled to and sought FMLA qualifying leave, because it provides no detail about when Plaintiff notified Defendant of his need to take stress leave, what he told Defendant about the leave, when he provided Defendant with his doctor's note regarding the leave, and what the doctor's note said.

Finally, as to the fifth element of an FMLA interference claim, Plaintiff must allege that his taking of FMLA-protected leave constituted a negative factor in the decision to terminate him. *Bachelder*, 259 F.3d at 1125. Here, the SAC includes the allegation that "Defendant willfully terminated Plaintiff based in whole or in part on the fact that Plaintiff took FMLA-protected leave." SAC ¶ 55. This allegation is entirely conclusory. In order to allege this element, Plaintiff must allege facts supporting his claim that his leave played a part in his termination.

Leave to amend may be denied "where the amendment would be futile." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). Although the court has already granted Plaintiff leave to amend his claims, the court's previous order did not address an FMLA interference claim and the court cannot say that amendment would be futile. Accordingly, the court will grant Plaintiff one final opportunity to amend the complaint to state an FMLA interference claim.[1] Any third amended complaint is due within 14 days of the date of this order. Plaintiff is not granted leave to

---

[1] As the court finds that Plaintiff has failed to state a claim for FMLA interference, it need not reach Defendant's argument that the claim is untimely.

assert any claims other than a FMLA claim in the third amended complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. Plaintiff's sex discrimination, disability discrimination, and Title VII retaliation claims are dismissed with prejudice. Plaintiff's motion to allege an FMLA interference claim is granted. Any third amended complaint is due within 14 days of the date of this order.

**IT IS SO ORDERED.**

Dated: March 13, 2020



Donna M. Ryu
United States Magistrate Judge

19