UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO N. DELA CRUZ,<br><br>      Plaintiff,<br><br>   v.<br><br>MEGAN BRENNAN,<br><br>      Defendant. | Case No. 19-cv-01140-DMR<br><br>**ORDER ON MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 58 |

Plaintiff Fernando N. Dela Cruz, Jr. filed a third amended complaint against Megan Brennan, Postmaster General, alleging a claim for Family Medical Leave Act ("FMLA") interference in connection with his previous employment with the United States Postal Service ("USPS"). [Docket No. 55 (3d Am. Compl., "TAC").] Defendant now moves to dismiss the TAC pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket No. 58.] This matter is suitable for resolution without a hearing. For the following reasons, the motion is granted in part and denied in part.[1]

### I.   BACKGROUND

#### A.   Allegations in the TAC

The TAC makes the following allegations: Plaintiff worked as a letter carrier for the USPS for over 15 years in Petaluma, California. TAC ¶ 6. On January 19, 2016, Plaintiff reported to his supervisor, Ryan Goodman, that the vehicle he was driving had a defective signal light. Goodman "raised his voice" and insisted that Plaintiff continue to drive the vehicle, which caused Plaintiff

---

[1] After briefing on this motion was complete, third party Danilo Vicente S. Dolido filed a "Request for Court Leave to Submit to this Honorable Court an Amicus Curiea [sic] Brief for the Plaintiff" in which Dolido appears to submit evidence in favor of some of Plaintiff's factual contentions. [Docket No. 62.] As the court's review of the present motion is limited to the pleadings, Dolido's request is denied. *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

"severe stress and emotional distress." *Id*. at ¶¶ 7, 8.

Plaintiff saw a doctor the next day and "discussed [with her] the stress he was experiencing due to the incident with Mr. Goodman . . . and inability to focus on work." The doctor gave Plaintiff a Work Status Report stating "[t]his patient is placed off work from January 20 to 29, 2016." *Id*. at ¶ 8. On January 20 or 21, 2016, one of Plaintiff's coworkers placed his doctor's note "in the sick leave box" at Plaintiff's request. *Id*. at ¶ 9. Upon his return to work, "Defendant did not ask Plaintiff anything about the leave to determine whether it was covered under the FMLA." Plaintiff later learned that Defendant "marked him AWOL" from January 19 to 29, 2016, even though he had provided a doctor's note. *Id*. at ¶ 11.

On March 9, 2016, Postmaster Raj Ghoman and Goodman "harassed" Plaintiff while he delivered mail "and impeded his movements to prevent [him] from delivering his mail timely." *Id*. at ¶ 12. On March 10, 2016, Ghoman and Goodman issued Plaintiff a Letter of Warning that listed 11 alleged violations of USPS procedures by Plaintiff. Plaintiff alleges that other employees committed the same acts but were not disciplined. *Id*. at ¶ 13-15.

On August 8, 2016, Plaintiff requested bereavement leave after his sister passed away. His supervisor ordered him to report to work, but Plaintiff "continued to take his bereavement leave anyway[.]" On August 9, 2016, Plaintiff called "the leave hotline and informed Defendant . . . that he would be out of the office on August 10, 2016." *Id*. at ¶¶ 16, 17. Plaintiff saw a doctor on August 11, 2016 "for stress, insomnia, and grief." The "After Visit summary" noted that Plaintiff had the condition of "[h]yperlipidemia (high blood fats)." The doctor prescribed Plaintiff medication for insomnia and anxiety, ordered tests, and wrote a Work Status Report stating, "this patient is placed off work from 8/10/2016 through 8/14/2016." A coworker placed the doctor's note "in Defendant's sick leave box on August 11, 2016" on Plaintiff's behalf. Plaintiff alleges that Defendant never asked Plaintiff any questions about this leave to determine whether it was FMLA-covered leave. *Id*. at ¶¶ 18, 19.

Although Plaintiff was scheduled to be off work on September 27, 2016, management ordered him to report to work anyway. During his shift "he experienced back pain" and as a result, he was absent from work on September 26 and 27, 2016. Plaintiff "notified management

why." *Id*. at ¶ 20.

On October 7, 2016, Plaintiff attended a "Joint Cooperation Process" meeting with his manager, Sue Moore. During the meeting, Moore alleged that Plaintiff "failed to follow instructions and failed to be in regular attendance from January 2016 to the present," referring to Plaintiff's "medical leaves of absences." *Id*. at ¶ 21. Plaintiff protested the meeting in writing and later filed a grievance with the Postmaster General regarding harassment and intimidation. *Id*. at ¶¶ 22, 23.

Defendant suspended Plaintiff without pay on October 26, 2016, stating Plaintiff "was under investigation of manipulating Collection Point Management Systems (CPMS) scans" on two dates in October 2016. Defendant later issued Plaintiff a Notice of Removal dated November 10, 2016, stating Plaintiff would be removed from his position effective December 23, 2016 for several violations. Plaintiff alleges that "[o]ther letter carriers . . . engaged in these same practices but were not disciplined." *Id*. at ¶¶ 24, 26. Plaintiff sought treatment from his doctor on November 29, 2016 for "stress and hyperlipidemia (high blood fats)." *Id*. at ¶ 27.

On December 12, 2016, Plaintiff filed a grievance through his union. Defendant ordered Plaintiff to return to work from December 20 to December 29, 2016 pursuant to an agreement with Plaintiff's union. Plaintiff refused to sign the agreement and was again suspended. *Id*. at ¶¶ 28, 29. Plaintiff was ultimately terminated effective January 18, 2017 for "dishonest and improper" scanning of barcodes. *Id*. at ¶ 31. Plaintiff alleges that in November 2016, a coworker, Winne He, was seen "scanning parcel barcodes in photos" with the assistance of a supervisor, the exact conduct for which he was terminated. *Id*. at ¶ 30.

Based on these allegations, Plaintiff alleges a single claim for FMLA interference under 29 U.S.C. § 2615.

**B.  Procedural History**

Plaintiff, representing himself, filed a complaint against Defendant on February 28, 2019. He filed a first amended complaint ("FAC") on August 15, 2019 alleging claims for disability and sex discrimination, violation of the Whistleblower Protection Act, and fraud. Defendant moved to dismiss and on November 4, 2019, the court dismissed the Whistleblower Protection Act and

3

1  fraud claims with prejudice, and dismissed Plaintiff's disability and sex discrimination claims with
2  leave to amend. [Docket No. 37.]
3        Plaintiff filed the second amended complaint ("SAC") on November 25, 2019 alleging
4  claims for sex discrimination, disability discrimination, Title VII retaliation, and retaliation for
5  taking FMLA-protected leave. Defendant again moved to dismiss. After Defendant filed her
6  motion to dismiss, Plaintiff moved for leave to add the FMLA retaliation claim to the SAC, which
7  Defendant opposed. An attorney subsequently entered an appearance on behalf of Plaintiff and
8  counsel for both parties presented oral argument at the February 13, 2020 hearing. On March 13,
9  2020, the court dismissed Plaintiff's sex discrimination, disability discrimination, and Title VII
10 retaliation claims with prejudice. The court granted Plaintiff "one final opportunity to amend the
11 complaint to state an FMLA interference claim." [Docket No. 54 at 18.] Plaintiff timely filed the
12 TAC and Defendant now moves to dismiss.

## II.  LEGAL STANDARD

14       A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in
15 the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).
16 When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
17 of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
18 (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or
19 there is an absence of "sufficient factual matter to state a facially plausible claim to relief."
20 *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing
21 *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.
22 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual
23 content that allows the court to draw the reasonable inference that the defendant is liable for the
24 misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged
25 must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of
26 a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing
27 *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir.
28 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir.

2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III. DISCUSSION

#### A. FMLA Interference and Retaliation Claims

The FMLA makes it unlawful for any covered employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an eligible employee's right to protected FMLA leave. 29 U.S.C. § 2615(a). "The FMLA creates two interrelated, substantive rights": (1) the "right to use a certain amount of leave for protected reasons," and (2) the "right to return to [the employee's] job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines,* 259 F.3d 1112, 1122 (9th Cir. 2001) (citation omitted). An employer may violate the latter right if it "interfere[s] with, restrain[s] den[ies] an employee's exercise or attempt to exercise those rights . . . or retaliate[s] or discriminate[s] against an employee . . . for participating in FMLA proceedings or inquiries." *Bonzani v. Shinseki,* No. CIV S–11–0007 EFB, 2011 WL 4479758, at *6 (E.D. Cal. Sept. 26, 2011); *see also Bachelder*, 259 F.3d at 1124 ("employer use of the 'taking of FMLA leave as a negative factor in employment actions'" violates FMLA).

A claim of retaliation for the exercise of FMLA rights "is properly analyzed as an interference claim under section 2651(a)(1)." *Rivera v. FedEx Corp.*, No. C 12-1098 PJH, 2013 WL 6672401, at *6 (N.D. Cal. Dec. 18, 2013 (citing *Bachelder*, 259 F.3d at 1124); *see also Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n.7 (9th Cir. 2003) ("§ 2615(a)(2) applies only to

5

employees who oppose employer practices made unlawful by FMLA, whereas, § 2615(a)(1) applies to employees who simply take FMLA leave and as a consequence are subjected to unlawful actions by the employer."). "FMLA interference can take many forms including, for example, using FMLA leave as a negative factor in hiring, promotions, disciplinary actions, and no-fault attendance policies." *Olson v. United States by & through Dep't of Energy*, 980 F.3d 1334, 1338 (9th Cir. 2020) (citing 29 C.F.R. § 825.220(c)). To state a claim for interference, a plaintiff must allege the following: (1) he is an eligible employee; (2) his employer is covered under the FMLA; (3) he was entitled to take leave; (4) he gave notice of his intention to take leave; and (5) the defendant denied him the benefits to which he was entitled under the FMLA. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). Where, as here, a plaintiff alleges retaliation for taking FMLA-protected leave, the plaintiff must allege that the taking of FMLA-protected leave constituted a negative factor in the decision to terminate him or her. *See Bachelder*, 259 F.3d at 1125.

Additionally, for an employee to state a claim for FMLA interference or retaliation, FMLA leave must be at issue. The FMLA provides that "an eligible employee shall be entitled to a total of 12 work-weeks of leave during any 12–month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 26 U.S.C. § 2612(a)(1). A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Finally, an action under FMLA must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1).

### B. Analysis

Plaintiff alleges a claim for FMLA interference under 29 U.S.C. § 2615. The TAC makes clear that this claim is based upon three distinct alleged violations. First, Plaintiff alleges that he was denied FMLA benefits to which he was entitled on two occasions: first, when Defendant marked him AWOL for his January 2016 leave, TAC ¶ 43; and second, when Defendant called

him in to work in August 2016 despite Plaintiff's request for bereavement leave. *Id.* at ¶ 46. Plaintiff also alleges that after taking FMLA-protected leaves of absence in January 2016 and August 2016, Defendant "harassed and retaliated against [him] in violation of the FMLA," including by disciplining him, suspending him, and ultimately terminating him. TAC ¶¶ 35, 42-51.

For purposes of this motion, Defendant does not dispute that Plaintiff has sufficiently alleged that he was an FMLA-eligible employee and that his employer was covered under the FMLA. Mot. 5. She argues that he has failed to adequately allege the third, fourth, and fifth elements of any FMLA interference claim, which require Plaintiff to allege that he was entitled to take leave for a "serious health condition," that he gave notice to Defendant of his intention to take leave, and that Defendant denied Plaintiff FMLA benefits and/or retaliated against him for using such benefits. She also argues that Plaintiff's claim must be dismissed because it is untimely.

The court addresses each of the three bases for Plaintiff's claim in turn.

### 1.     Being Marked AWOL for January 2016 Leave

Plaintiff alleges that on January 19, 2020, after Goodman "raised his voice" and insisted that Plaintiff drive a defective vehicle, he experienced "severe stress and emotional distress." The next day he saw a doctor who took him off work from January 20 to 29, 2016. TAC ¶¶ 7, 8. Although Plaintiff had a coworker place his doctor's note "in the sick leave box," Defendant did not ask him anything about his period of absence when he returned to work, and later "marked him AWOL" during the period January 19 to 29, 2016. *Id.* at ¶¶ 9-11. Plaintiff alleges that this "effectively denied his FMLA protected sick leave request." Opp'n 5; TAC ¶ 43.

In order to state an FMLA claim, "FMLA leave must be at issue." *Lacayo v. Donahoe*, No. 14-CV-04077-JSC, 2015 WL 3866070, at *6 (N.D. Cal. June 22, 2015) (citations omitted). Plaintiff has not stated an FMLA interference claim based on the January 2016 leave because he has not sufficiently alleged that he had a "serious health condition" for purposes of FMLA. A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Department of Labor

7

regulations provide that "continuing treatment" entails a "period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves" either (a) treatment two or more times by a health care provider within thirty days of the first day of incapacity, unless extenuating circumstances exist, or (b) treatment by a health care provider on at least one occasion resulting in a regimen of continuing treatment under that provider's supervision.  29 C.F.R. § 825.115(a).[2]

Plaintiff does not allege that he received inpatient care; therefore, if he had a "serious health condition" it was because he had a condition that involved "continuing treatment by a health care provider."  Plaintiff alleges that he saw a doctor on January 20, 2016 and that the doctor took him off work from January 20 to 29, 2016.  However, he does not allege that he received two treatments by a health care provider within 30 days of the first day of his incapacity, or that his doctor placed him on a regimen of continuing treatment under the doctor's supervision on January 20, 2016.

Plaintiff argues that his combined leaves in January and August 2016 "constituted treatment by a health provider twice" and notes his allegation that he saw his health care provider a third time in November 2016.  Opp'n 8; *see* TAC ¶ 38 (alleging Plaintiff received treatment on January 20, 2016, August 11, 2016, and November 29, 2016, which was "treatment two or more times by his provider over a period of twelve (12) months.").  However, this ignores the language of the regulation, which provides that continuing treatment involves "[t]reatment two or more times, *within 30 days of the first day of incapacity*, unless extenuating circumstances exist."  29 C.F.R. § 825.115(a)(1) (emphasis added).  Plaintiff does not allege the existence of any extenuating circumstances that prevented him from having a second treatment within 30 days of his first day of incapacity, nor does he allege that his doctor placed him on a regimen of continuing treatment under the doctor's supervision.  Therefore, as Plaintiff has failed to allege

---

[2] The regulation provides that serious health conditions involving continuing treatment by a health care provider also include "[p]regnancy or prenatal care," "[c]hronic conditions," "[p]ermanent or long-term conditions," and "[c]onditions requiring multiple treatments," such as surgery after an accident or an injury or cancer, severe arthritis, or kidney disease.  Plaintiff does not allege that he has any of these conditions.

8

that he suffered from a condition requiring "continuing treatment" in connection with his January 2016 leave, he has failed to allege that he suffered from a "serious health condition" at that time entitling him to FMLA leave.  The TAC thus fails to state a claim for FMLA interference related to the January 2016 leave.

### 2. Being Called in to Work in August 2016

Plaintiff next alleges that on August 8, 2016, his sister passed away and he requested bereavement leave.  His supervisor "ordered him to report to work anyway," and Plaintiff "continued to take his bereavement leave anyway in order to grieve for his sister."  TAC ¶ 16.  He contends that the supervisor's order constitutes interference with his FMLA leave.  Opp'n 6; TAC ¶ 46.

As noted, in order to state an FMLA interference claim, a plaintiff must allege that "his employer denied him FMLA benefits to which he was entitled," among other things.  *Sanders*, 657 F.3d at 778.  Although it appears that the Ninth Circuit has not addressed the question, numerous courts have held that "bereavement leave or absence from work following the death of a family member is not protected under the FMLA."  *Lacayo*, 2015 WL 3866070, at *8 (citing *Torres v. Inspire Dev. Ctrs.*, No. 13-cv-3062-TOR, 2014 WL 3697816, at *5 (E.D. Wash. July 24, 2014) (collecting cases)).  Plaintiff does not respond to this authority or offer any support for his claim that his bereavement leave was FMLA-protected leave.  Therefore, Plaintiff has failed to state an FMLA interference claim based on the denial of his August 8, 2016 request for bereavement leave.

### 3. Defendant's Use of January 2016 and August 2016 Leaves as Negative Factors in Disciplinary Actions and Termination

Plaintiff's final claim is that he was "harassed and retaliated against" and ultimately terminated in retaliation for taking FMLA-protected leaves in January and August 2016.  TAC ¶¶ 42-51.  As discussed above, Plaintiff's January 2016 leave does not qualify as FMLA-protected leave.  Therefore, only the August 2016 leave can potentially form the basis for this FMLA claim.  *See Bachelder*, 259 F.3d at 1125 (noting that the FMLA "does not protect an employee against disciplinary action based upon [ ] absences if those absences are not taken for one of the reasons

9

enumerated in the Act[.]" (quotation marks and citation removed; first alteration in original)).

Defendant contends that Plaintiff has not sufficiently alleged that he was entitled to take leave in August 2016, that he gave adequate notice of his intention to take leave for a serious health condition under FMLA, or that his taking of FMLA-protected leave constituted a negative factor in the decision to terminate him.[3]

Plaintiff alleges that on August 11, 2016, he saw his doctor for "stress, insomnia, and grief," and that his doctor placed him off work from August 10 through 14, 2016. TAC ¶¶ 18-19. He also alleges that his doctor prescribed him "trazodone to treat insomnia and anxiety." *Id*. at ¶ 18. As noted, the applicable regulation defines "continuing treatment" as a "period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves" either (a) treatment two or more times by a health care provider within thirty days of the first day of incapacity, or (b) treatment by a health care provider on at least one occasion resulting in a regimen of continuing treatment under that provider's supervision. 29 C.F.R. § 825.115(a).

The court finds that the TAC sufficiently alleges that Plaintiff had a "serious health condition" in connection with the August 10-14, 2016 leave that entitled him to FMLA benefits. While Plaintiff does not allege that he received two treatments by a health care provider within 30 days of the first day of his incapacity, he alleges that the doctor prescribed medication at the August 11, 2016 visit. Under Department of Labor regulations, "[a] regimen of continuing treatment includes . . . a course of prescription medication . . ." 29 C.F.R. §§ 825.113(c). Therefore, Plaintiff has alleged that he received "treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider," which is sufficient to allege a serious health condition. 29 C.F.R. §

---

[3] Defendant also argued in her opening brief that Plaintiff has not alleged that he was denied any benefits to which he was entitled under FMLA in connection with his August 10-14, 2016 leave, as Plaintiff alleges that he was able to take the leave he requested. Mot. 7. In his opposition, Plaintiff does not contend that he was denied benefits or leave from August 10-14, 2016; he only addresses the order by his supervisor to come to work on August 8, 2016 despite his request for bereavement leave. Opp'n 8.

1    825.115(a)(2).

2    Turning to the issue of whether Plaintiff provided proper notice of his intention to take FMLA leave, the Ninth Circuit has held that "[e]mployees need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply." *Bachelder*, 259 F.3d at 1130. "It is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements." *Xin Liu*, 347 F.3d at 1134. An employee seeking FMLA leave "need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. §§ 825.302(c), 825.303(b). If the leave is foreseeable, the employee must "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). If the leave is unforeseeable, the employee must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(c).

Here, Plaintiff alleges that on August 11, 2016, a coworker placed in Defendant's sick leave box a doctor's note that stated, "[Plaintiff] is placed off work from 8/10/2016 through 8/14/2016." TAC ¶ 19. The allegation that Plaintiff notified Defendant that a doctor had taken him off work for five days is sufficient to plead that Defendant was on notice that the leave might be covered by FMLA. *See Bachelder*, 259 F.3d at 1130 (holding that employee that provided two doctor's notices regarding her absences placed the employer on notice that the leave might be covered by the FMLA); *see also* 29 U.S.C. § 825.303(b) (information that is sufficient "for an employer to reasonably determine whether the FMLA may apply to [a] leave request" may include "that a condition renders the employee unable to perform the functions of the job").

Defendant next argues that the TAC does not sufficiently allege that his taking of FMLA-protected leave constituted a negative factor in the decision to terminate him. "[T]he FMLA is implicated and does protect an employee against disciplinary action based on her absences if those absences are taken for one of the Act's enumerated reasons." *Bachelder*, 259 F.3d at 1125 (emphasis removed). The *McDonnell Douglas* burden shifting approach is inapplicable to FMLA claims; a plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-

11

protected leave constituted a negative factor in the decision to terminate her." *Id*. Here, Plaintiff alleges that he met with his supervisor, Sue Moore, on October 7, 2016 in a "Joint Cooperation Process," and that she "alleged that [Plaintiff] failed to follow instructions and failed to be in regular attendance from January 2016 to the present," referring to his January 2016 and August 2016 leaves of absence. TAC ¶ 21. Plaintiff alleges that after this meeting, he was suspended twice, issued Notices of Removal, and ultimately terminated for reasons that he disputes, suggesting that they were pretextual. *Id*. at ¶¶ 24-26, 29-31. Prior to January 2016, Plaintiff had never been reprimanded, warned, disciplined, or suspended. *Id*. at ¶ 52. These allegations are sufficient to plead that Plaintiff's FMLA-leave in August 2016 constituted a negative factor in the termination decision. Plaintiff has therefore stated a claim for FMLA interference based on the August 2016 leave.

Finally, Defendant argues that Plaintiff's claim must be dismissed as untimely. An action under FMLA must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). "This limitation is extended to three years for a 'willful violation.'" *Olson*, 980 F.3d at 1338 (citing 29 U.S.C. § 2617(c)(2)). "[T]o benefit from the FMLA's three-year statute of limitations, a plaintiff must show that her employer either knew or showed reckless disregard for whether its conduct violated the Act." *Olson*, 980 F.3d at 1339.

Here, Plaintiff alleges he was terminated on January 18, 2017 in retaliation for taking FMLA leave. He did not file this action until February 28, 2019, over two years later. Therefore, he must allege that Defendants either "knew or showed reckless disregard for whether its conduct violated" FMLA in order for his claim to be timely. The TAC alleges that Defendant's actions were "made with reckless indifference and wanton and willful disregard of Plaintiff's rights." TAC ¶ 53. These actions include Defendant's failure to inquire about Plaintiff's August 10-14, 2016 leave to determine whether it was FMLA-protected leave, despite being on notice that it might qualify as FMLA leave, and his manager's reference to such leave as Plaintiff's "fail[ure] to be in regular attendance" during a Joint Cooperation Process meeting. *See id*. at ¶¶ 19, 21. At the pleading stage, Plaintiff has sufficiently alleged facts to support application of the three-year

statute of limitations.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part. The initial case management conference is set for February 17, 2021 at 1:30 p.m. The parties' joint CMC statement is due by February 10, 2021.

**IT IS SO ORDERED.**

Dated: January 4, 2021



Donna M. Ryu
United States Magistrate Judge

13