UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO N. DELA CRUZ,<br>          Plaintiff,<br>    v.<br>LOUIS DEJOY,<br>          Defendant. | Case No. 19-cv-01140-DMR<br><br>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 95 |

       Plaintiff Fernando N. dela Cruz, Jr. alleges a single claim for Family Medical Leave Act ("FMLA") interference in connection with his previous employment with the United States Postal Service ("USPS"). Defendant Louis DeJoy, Postmaster General, now moves for summary judgment. [Docket No. 95.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). As explained below, the motion is denied due to the existence of material disputes of fact.[1]

## I.    BACKGROUND

       Dela Cruz was employed by the USPS as a mail carrier in Petaluma, California from 2001 until his termination in January 2017. In August 2016, dela Cruz's sister passed away. His doctor subsequently placed him off work for a five-day period. In October 2016, the USPS issued a "Letter of Warning" to dela Cruz that stated that he "failed to be in regular attendance from January 2016 to the present." The USPS later suspended him and eventually terminated his employment for falsifying scans of mailboxes. Dela Cruz alleges that the stated reason for his termination was pretextual and that his August 2016 FMLA leave constituted a negative factor in the termination decision.

       Following the court's order granting in part and denying in part Defendant's motion to

---

[1] Dela Cruz's unopposed application for leave to file a late amended opposition and declarations is granted, as Defendant was not prejudiced by the late filing. [Docket No. 109.]

dismiss the third amended complaint ("TAC"), the sole remaining claim is an FMLA interference claim based on the allegation that dela Cruz was terminated in retaliation for taking leave in August 2016. *See Dela Cruz v. Brennan*, No. 19-CV-01140-DMR, 2021 WL 23295, at *6-7 (N.D. Cal. Jan. 4, 2021).

## II.   OBJECTIONS TO EVIDENCE

### A.   Jamero Declaration

Defendant objects to the declaration of Anthony Jamero because he was never disclosed as a witness. Reply 2. Defendant cites General Order No. 71, Initial Discovery Protocols for Employment Cases Alleging Adverse Action, which requires plaintiffs to "[i]dentify persons the plaintiff believes to have knowledge of the facts concerning the claims or defenses at issue in this lawsuit, and a brief description of that knowledge." *See* General Order No. 71 at 3, available at https://cand.uscourts.gov/wp-content/uploads/general-orders/GO_71_2-1-2020.pdf. Defendant contends that dela Cruz never identified Jamero as a witness in any General Order 71 disclosure and that the declaration must be stricken. Reply 2. General Order No. 71 does not apply to cases such as this one in which the allegations involve only violations of the FMLA. *See* General Order No. 71 at 1.

Defendant also argues that dela Cruz did not identify Jamero "as a witness who has knowledge of, or information about, the allegations in his lawsuit in any discovery response," Reply 2, but did not support this assertion with any evidence, such as a discovery request asking dela Cruz to identify witnesses with knowledge of the allegations in this case.

In any event, the court does not rely on Jamero's declaration in reaching its decision. Accordingly, the objection is denied as moot.

### B.   Sumagaysay's Declaration

Defendant objects to Exhibits A and B to Sumagaysay's declaration based on Federal Rules of Evidence 801, 802, and 901, arguing that the documents have not been authenticated by a witness with personal knowledge and thus lack foundation. Reply 5-6.[2] He also objects based on

---

[2] Defendant also objects to Exhibit F to Sumagaysay's declaration. The objection is overruled as moot. Even though Sumagaysay describes Exhibit F in paragraph 7 of her declaration, she did not

Federal Rule of Evidence Rule 602, arguing that the exhibits constitute inadmissible hearsay because they have not been authenticated and lack foundation. *Id*.

The Ninth Circuit has held that "unauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). "[D]ocuments authenticated through personal knowledge must be attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id*. at 773-74 (quotation omitted). However, documents produced by a party in discovery may be deemed authentic when offered by a party opponent. *See id*. at 777 n.20 (citing *Maljack Prods., Inc. v. GoodTimes Home Video Corp*., 81 F.3d 881, 889 n.12 (9th Cir. 1996) (holding district court did not err in considering documents offered by defendants that had been produced by plaintiff where many of the documents were on plaintiff's letterhead and plaintiff did not contest their authenticity)). Moreover, the Ninth Circuit has held post-*Orr* that "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (citing cases). "Evidence may be offered to support or dispute a fact on summary judgment . . . if it could be presented in an admissible form at trial," *S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 925-26 (9th Cir. 2014) (internal quotation marks and citation omitted), and in order to prevail on the evidentiary objections, Defendant must show that the evidence "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Sumagaysay states, and Defendant does not dispute, that Exhibits A and B were produced by Defendant in discovery. [Docket No. 105 (Sumagaysay Decl., May 6, 2022) ¶¶ 2, 3, Exs. A, B.] Exhibit A is bates-stamped USA001023, and Exhibit B is bates-stamped USA002098-2090. Defendant does not otherwise contest the authenticity of these documents or contend that the exhibits or the information therein could not be presented in an admissible form at trial. Accordingly, the objections to Exhibits A and B are overruled.

---

include Exhibit F.

\* \* \*

Defendant's remaining objections to dela Cruz's evidence are denied as moot, as the court does not rely on the disputed evidence in reaching its decision.

## III. LEGAL STANDARDS

### A. Summary Judgment

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-moving party. *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine factual issue exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could return a verdict for the nonmoving party. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248). The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of material fact exists. *Devereaux*, 263 F.3d at 1076. More than a "scintilla of evidence" must exist to support the non-moving party's claims. *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477 U.S. at 252). A showing that "there is some 'metaphysical doubt' as to the material facts as issue" will not suffice. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at

587).

### B.  FMLA Interference

"The FMLA creates two interrelated, substantive rights": (1) the "right to use a certain amount of leave for protected reasons," and (2) the "right to return to [the employee's] job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines,* 259 F.3d 1112, 1122 (9th Cir. 2001) (citation omitted). To that end, the FMLA makes it unlawful for any covered employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an eligible employee's right to protected FMLA leave. 29 U.S.C. § 2615(a)(1).

A claim of retaliation for the exercise of FMLA rights "is properly analyzed as an interference claim under section 2615(a)(1)." *Rivera v. FedEx Corp.*, No. C 12-1098 PJH, 2013 WL 6672401, at *6 (N.D. Cal. Dec. 18, 2013) (citing *Bachelder*, 259 F.3d at 1124); *see also Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n.7 (9th Cir. 2003) ("§ 2615(a)(1) applies to employees who simply take FMLA leave and as a consequence are subjected to unlawful actions by the employer."). "FMLA interference can take many forms including, for example, using FMLA leave as a negative factor in hiring, promotions, disciplinary actions, and no-fault attendance policies." *Olson v. United States by & through Dep't of Energy*, 980 F.3d 1334, 1338 (9th Cir. 2020) (citing 29 C.F.R. § 825.220(c)); *accord Bachelder*, 259 F.3d at 1124. To prove a claim for interference, a plaintiff must establish the following: (1) he was an employee "eligible for the FMLA's protections"; (2) his employer was covered under the FMLA; (3) he was entitled to take leave under the FMLA; (4) he "provided sufficient notice of his intent to take leave"; and (5) "his employer denied him FMLA benefits to which he was entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (quotation marks and citation omitted). Where, as here, a plaintiff alleges retaliation for taking FMLA-protected leave, the plaintiff must prove that the taking of FMLA-protected leave "constituted a negative factor in the decision to terminate" him or her. *See Bachelder*, 259 F.3d at 1125. An employee can prove an interference claim, "as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Sanders*, 657 F.3d at 778 (citing *Bachelder,* 259 F.3d at 1125 (holding that the *McDonnell Douglas* burden-shifting approach is "inapplicable" to interference claims)). An action under the FMLA must be

brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1).

## IV. ANALYSIS

Defendant argues that he is entitled to summary judgment on dela Cruz's FMLA interference claim because 1) dela Cruz was not entitled to take FMLA leave in August 2016; 2) dela Cruz never gave the USPS notice of his intention to take FMLA-covered leave in August 2016; 3) the USPS did not terminate dela Cruz for taking leave in August 2016; and 4) it is time-barred.[3]

### A. Whether dela Cruz Was Entitled to Take FMLA Leave in August 2016

In order to establish a claim for FMLA interference or retaliation, FMLA leave must be at issue. The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 26 U.S.C. § 2612(a)(1). A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Department of Labor regulations provide that "continuing treatment" entails a "period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves" either (a) treatment two or more times by a health care provider within thirty days of the first day of incapacity, unless extenuating circumstances exist, or (b) treatment by a health care provider on at least one occasion resulting in a regimen of continuing treatment under that provider's supervision. 29 C.F.R. § 825.115(a).

Defendant argues that dela Cruz's leave in August 2016 was not related to a "serious health condition" because he sought treatment for bereavement related to his sister's death. He argues that bereavement is not a serious health condition under the FMLA. Mot. 14-15 (citing *Lacayo v. Donahoe*, No. 14-CV-04077-JSC, 2015 WL 3866070, at *8 (N.D. Cal. June 22, 2015)

---

[3] Defendant does not dispute that dela Cruz was an employee eligible for the FMLA's protections or that the USPS is covered under the FMLA. Mot. 13.

6

1  ("Although the Ninth Circuit does not appear to have addressed this issue, many other federal
2  courts have held that bereavement leave or absence from work following the death of a family
3  member is not protected under the FMLA." (quotation and citation omitted))).  Defendant also
4  argues that even if dela Cruz had a serious health condition in August 2016, he was not
5  incapacitated for more than "three full calendar days" due to the condition.  Mot. 15.

The record contains evidence that dela Cruz saw Frank Shic, M.D., on August 11, 2016.  While bereavement is one of the listed "reasons" for the visit on the "After Visit" summary of the appointment, it is not the only one.  The summary lists two other reasons: "INSOMNIA--PRIMARY" and "HYPERLIPIDEMIA (HIGH BLOOD FATS)."  [Docket No. 103-1 (dela Cruz Decl., May 5, 2022) ¶ 17, Ex. A (After Visit Summary) at 3.]  The After Visit Summary also contains the instruction, "Go to pharmacy 2 to pick up your medications," and dela Cruz submits evidence that Dr. Shic prescribed one 50 mg. tablet of Trazodone daily on the same date as his appointment, August 11, 2016.  dela Cruz Decl. ¶ 18, Ex. B (photo of Trazodone prescription).  On August 11, 2016, Dr. Shic placed dela Cruz off work for five days, from August 10, 2016 through August 14, 2016.  Sumagaysay Decl. ¶ 5, Ex. D at ECF p. 12 (Work Status Report).

This evidence is sufficient to create a dispute of fact as to whether dela Cruz sought treatment for a "serious health condition" under the FMLA.  While there is no evidence that dela Cruz received two treatments by a health care provider within 30 days of the first day of his incapacity, he presented evidence that Dr. Shic prescribed medication at the August 11, 2016 visit.  Under Department of Labor regulations, "[a] regimen of continuing treatment includes . . . a course of prescription medication . . ." 29 C.F.R. §§ 825.113(c).  Therefore, dela Cruz has established a dispute of fact as to whether he received "treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider," pursuant to 29 C.F.R. § 825.115(a)(2).

Moreover, dela Cruz has presented evidence from which a reasonable fact finder could determine that he was incapacitated for more than three consecutive, full calendar days because Dr. Shic placed him off work from August 10, 2016 through August 14, 2016.  Defendant argues that the earliest date that dela Cruz's health condition started was August 11, 2016, the date he

7

first saw a health care provider, and that dela Cruz was not scheduled to work on August 14, 2016. Therefore, Defendant argues, dela Cruz was only incapacitated from August 11, 2016 through August 13, 2016, which is not a "period of incapacity of more than three consecutive, full calendar days." Mot. 15-16 (citing 29 C.F.R. § 825.115(a)(1)). Defendant offers no legal authority for the proposition that a court should disregard days in which an employee is not scheduled to work when counting consecutive days of incapacity.

### B. Whether dela Cruz Gave Notice of His Intention to take FMLA-Covered Leave in August 2016

The Ninth Circuit has held that "[e]mployees need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply." *Bachelder*, 259 F.3d at 1130. "It is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements." *Xin Liu*, 347 F.3d at 1134. An employee seeking FMLA leave "need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. §§ 825.302(c), 825.303(b). If the leave is foreseeable, the employee must "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). If the leave is unforeseeable, the employee must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(c).

On August 12 or 13, 2016, dela Cruz submitted a "Request for or Notification of Absence" form to the USPS through his coworker, Danilo Dolido. [Docket No. 96 (Johns Decl., Apr. 21, 2022) ¶ 2, Ex. A (dela Cruz Dep.) at 71-73, 78-79; ¶ 3, Ex. B at ECF p. 5.] The form expressly states that dela Cruz requested "sick" leave from August 10, 2016 through August 14, 2016, but does not contain any details about his condition. On August 12 or 13, 2016, dela Cruz submitted the Work Status Report through Dolido reflecting that Dr. Shic placed him off work for five days, from August 10, 2016 through August 14, 2016. Johns Decl. Ex. B at ECF p. 3; dela Cruz Dep. 66-67. Defendant asserts that "Plaintiff never confirmed with his supervisor that Dolido submitted any of his requests for leave to the Postal Service," Mot. 18, but does not actually dispute that the

8

1   USPS received the requests for leave. *See id*. at 17-18. At the very least, a dispute of fact exists
2   as to whether the USPS received the requests. Moreover, evidence that dela Cruz requested five
3   days of sick leave and submitted a notice from his doctor placing him off work for five days is
4   sufficient to create a dispute of fact as to whether Defendant was on notice that the leave might be
5   covered by FMLA. *See Bachelder*, 259 F.3d at 1130 (holding that employee that provided two
6   doctor's notices regarding her absences placed the employer on notice that the leave might be
7   covered by the FMLA); *see also* 29 U.S.C. § 825.303(b) (information that is sufficient "for an
8   employer to reasonably determine whether the FMLA may apply to [a] leave request" may include
9   "that a condition renders the employee unable to perform the functions of the job").

### C. Whether dela Cruz Was Terminated for Taking Leave in August 2016

"[T]he FMLA is implicated and does protect an employee against disciplinary action based on her absences if those absences are taken for one of the Act's enumerated reasons." *Bachelder*, 259 F.3d at 1125 (emphasis removed). The *McDonnell Douglas* burden shifting approach is inapplicable to FMLA claims; a plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Id*.

Dela Cruz's supervisor Sue Moore issued him a "Letter of Warning" on October 7, 2016 in which she wrote, "You are charged with failure to meet the attendance requirements of your position of reporting for duty as scheduled and required. You failed to report to work as scheduled utilizing 22 days of sick leave . . . ." Johns Decl. Ex. B at ECF p. 19. Defendant argues that the Letter of Warning does not specifically mention the period from August 10, 2016 through August 14, 2016 and that there is no evidence connecting the Letter of Warning to the four days of leave at issue in this case. Mot. 20-21. The facts are disputed, preventing summary judgment on this issue. Dela Cruz submits an "Employee Key Indicators Report" listing 22 "occurrence[s] of sick leave" in 2016 that includes August 10, 2016 through August 14, 2016, creating a dispute of fact as to whether the Letter of Warning was based in part on the August 2016 sick leave. *See* Sumagaysay Decl. ¶ 2, Ex. A.

Additionally, in Moore's November 2, 2016 "Supervisor Worksheet for Discipline"

recommending dela Cruz's removal for falsifying scans, Moore checked "yes" next to the question, "Are you aware of any previous discipline for this employee?" Sumagaysay Decl. ¶ 3, Ex. B. A reasonable factfinder could conclude that Moore thus considered dela Cruz's prior discipline, including the Letter of Warning, in recommending his removal.

Dela Cruz also submitted evidence creating a dispute of fact as to whether the stated reason for his termination, falsifying scans of mailboxes, was pretextual. Dolido, dela Cruz's coworker, states that after Defendant suspended dela Cruz, "management held a stand-up instructing us letter carriers that we could not take photos of barcodes at collection boxes," and that "[t]hat was the first time management gave us letter carriers this instruction." [Docket No. 102 (Dolido Decl., May 5, 2022) ¶ 15.] Additionally, in Moore's November 2, 2016 "Supervisor Worksheet for Discipline," Moore checked "no" next to the question, "Have you disciplined other employees for similar acts?" Sumagaysay Ex. B.

This evidence is sufficient to create a dispute of fact as to whether the stated reason for dela Cruz's termination was pretextual and whether his leave in August 2016 constituted a negative factor in the decision to terminate him.

### D. Whether dela Cruz's Claim is Time-Barred

An action under FMLA must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). "This limitation is extended to three years for a 'willful violation.'" *Olson*, 980 F.3d at 1338 (citing 29 U.S.C. § 2617(c)(2)). "[T]o benefit from the FMLA's three-year statute of limitations, a plaintiff must show that her employer either knew or showed reckless disregard for whether its conduct violated the Act." *Olson*, 980 F.3d at 1339.

Dela Cruz alleges he was terminated on January 18, 2017 in retaliation for taking FMLA leave. He did not file this action until February 28, 2019, over two years later. Therefore, he must establish that Defendant either "knew or showed reckless disregard for whether its conduct violated" FMLA in order for his claim to be timely. Given the disputes of fact set forth above, including whether Defendant failed to inquire about dela Cruz's August 2016 leave to determine whether it was FMLA-protected leave and whether the stated reason for dela Cruz's suspension

and eventual termination was pretextual, the court concludes that a dispute of fact exists as to whether Defendant's alleged interference with dela Cruz's FMLA rights was willful, and therefore whether dela Cruz's case was timely filed.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied.

**IT IS SO ORDERED.**

Dated: July 11, 2022



Donna M. Ryu
United States Magistrate Judge